IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**UNITED STATES OF AMERICA,**

v.  **Criminal Action No. 3:14cr114**

**EARL FRANK HILL, JR.,**

**Defendant.**

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Earl Frank Hill Jr.'s Motion for Compassionate Release pursuant to Section 603(b) of the First Step Act (the "Motion"). (ECF No. 49.) The United States responded in opposition, (the "Opposition"), (ECF No. 55), and Hill replied, (the "Reply"). (ECF No. 56). The matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons that follow, the Court will deny the Motion.

### I. Background

On August 25, 2014, Hill pled guilty pursuant to a written plea agreement to "conspiracy to distribute, and possess with the intent to distribute, one hundred grams or more of heroin, a schedule I controlled substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1) and 841(b)(1)(B)." (Plea Agreement 1, ECF No. 13.) The Plea Agreement and the Statement of Facts describe the conduct underlying Hill's offense. During a traffic stop, law enforcement officers detained Hill for possessing a firearm and recovered "104 grams of heroin, a .38 caliber Rossi revolver, and over $20,000 in U.S. Currency." (Statement of Facts 1–2, ECF No. 14.) After being advised of his *Miranda* rights, Hill "admitted to dealing . . . heroin . . . for

the past several months prior to his arrest, receiving heroin . . . totaling more than 150 grams." (*Id.* 2.) "Hill possessed . . . 104 grams of heroin on January 25, 2014, with the intent to distribute it." (*Id.*)

Pursuant to the Sentencing Guidelines, Hill's offense level of 31 and criminal history category VI[1] suggested a sentence between 188 to 235 months' imprisonment and at least four years of supervised release. (Presentence Report "PSR" ¶ 77; ECF No. 46.) Prior to sentencing, the Presentence Report provided information on Hill's physical condition, recognizing in 2014 that he suffered from congestive heart failure, high blood pressure, and asthma. (PSR ¶¶ 64–66.)

On December 2, 2014, this Court sentenced Hill at the low end of the Guidelines range and imposed a term of 188 months' imprisonment and five years of supervised release. (J. 2, ECF No. 24.) Hill is currently housed at FCI Allenwood Low.[2] (Opp'n 1 n.1, ECF No. 55.) The Bureau of Prisons ("BOP") states that Hill will be released on July 14, 2027. *See* Bureau of Prisons, *Fed. Inmate Locator*, https://www.bop.gov/inmateloc/.

"Hill submitted an administrative request for compassionate release to the Warden at Allenwood on April 28, 2020." (Mot. 3, ECF No. 49.) Upon his request for compassionate release, the attending physician for the BOP issued a one-page report dated May 1, 2020 noting that Hill has served roughly forty percent of his sentence and no medical conditions warrant

---

[1] Hill's criminal history resulted in a career offender sentence enhancement, thereby placing him in criminal history category VI. (PSR ¶ 48.) Hill had two prior Virginia convictions that qualified him as a career offender: possession of cocaine with intent to distribute, (*id.* ¶ 35), and possession of heroin, (*id.* ¶ 43). *See* U.S. SENT'G GUIDELINES MANUAL § 4B1.1 (U.S. SENT'G COMM'N 2014).

[2] The Bureau of Prisons currently reports one COVID-19 case at FCI Allenwood Low. (*See also* Aug. 20, 2020 Hill Letter 1, ECF No. 57 (letter from Hill explaining Allenwood has its first COVID-19 case)).

2

release.³ (Mot., Ex. A, ECF No. 55–1.) On May 6, 2020, the BOP Unit Manager denied Hill's request for home confinement. (Mot. Ex. 1, ECF No. 49–1; Opp'n 8, ECF No. 55.)

On June 25, 2020, Hill filed the instant Motion for Compassionate Release. (ECF No. 49.) In the Motion, Hill describes the current public health crisis caused by COVID-19. (*See e.g.*, *id.* 4–6.) Hill, currently fifty-seven-years old, contends that he "suffers now, or has suffered in the past, from congestive heart failure, deep vein thrombosis, asthma, high blood pressure, pulmonary edema, high cholesterol, pre-diabetic, sleep apnea, obesity, and peripheral vascular disease, which place him at serious risk for a severe or fatal reaction to COVID-19." (Mot. 2.) Hill avers that "[u]pon his release, [he] will live with his wife . . . in Piscataway, New Jersey. She owns a single-family home and lives there with the couple's three children." (Mot. 16.) The United States opposes his request for compassionate release. (*See* ECF No. 55.)

## II. Legal Standard: Compassionate Release Under the First Step Act of 2018

In 2018, Congress enacted the First Step Act to provide incarcerated individuals the opportunity to directly petition the courts for compassionate release under 18 U.S.C. § 3582(c)(1)(A).⁴ Prior to the First Step Act in 2018, the BOP had the sole authority to petition

---

³ Hill observes that the United States did not provide a CV or other information for the BOP doctor who provided the one-page report. In his Reply, Hill contends "[t]here is no CV submitted or any indication of his qualifications, education or experience. There is no record of what [the doctor] reviewed to make his assessment, and there is no statement that he even saw Mr. Hill or spoke with him regarding his medical conditions." (Reply 3–4 n.1, ECF No. 56.) Without this information, the Court does not rely on the BOP doctor's determination regarding the seriousness of Hill's medical conditions. The Court instead looks to the PSR and medical records in the record.

⁴ Section 3582(c)(1)(A) states:

The court may not modify a term of imprisonment once it has been imposed except that—
(1) in any case—(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's

3

the court for sentence modifications on compassionate release grounds. *Coleman v. United States*, No. 4:17-cr-69, 2020 WL 3039123, at *1 (E.D. Va. June 4, 2020). Following enactment of the First Step Act, criminal defendants may petition courts on their own initiative to modify their sentences if "extraordinary and compelling reasons warrant such a reduction." *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Before granting a reduction, courts must consider the factors set forth in 18 U.S.C. § 3553(a), *see* 18 U.S.C. § 3582(c)(1)(A), and evidence of rehabilitation and other post-conviction conduct. *See United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019) (requiring consideration of post-conviction evidence and statutory sentencing factors in the context of a sentence reduction sought pursuant to § 3582(c)(2)).

### A. Exhaustion of Administrative Remedies

Although the Court generally cannot "modify a term of imprisonment once it has been imposed," the defendant may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier...." 18 U.S.C. § 3582(c)(1)(A). "Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or

---

> behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.
>
> 18 U.S.C. § 3582(c)(1)(A).

4

her administrative remedies prior to bringing a motion before the district court." *Casey v. United States*, No. 4:18-cr-4, 2020 WL 2297184, at \*1 (E.D. Va. May 6, 2020).

The court may waive the exhaustion requirement, however, in certain circumstances. *United States v. Jones*, No. 3:11-cr-249, ECF No. 47, at \*2–3 (E.D. Va. Apr. 3, 2020) (Lauck, J.) Courts may waive exhaustion if: "pursuing an administrative remedy would be futile[,]" "'exhaustion via the agency review process would result in inadequate relief[,]' or 'pursuit of agency review would subject the petitioner to undue prejudice.'" *United States v. Robinson*, No. 3:10cr261, 2020 WL 4041436, at \*3 (E.D. Va. July 17, 2020) (Lauck, J.) (quoting *Poulios v. United States*, No. 2:09-cr-109, 2020 WL 1922775, at \*1 (E.D. Va. Apr. 21, 2020) (Jackson, J.)).

Throughout the country, courts have found the coronavirus pandemic, combined with a vulnerable defendant with underlying health conditions, implicates all three exceptions justifying a waiver of the exhaustion requirement. *See United States v. Zukerman*, 451 F. Supp. 3d 329, 332–33 (S.D.N.Y. 2020) (holding that defendant's elderly age and serious health conditions warrant a waiver of exhaustion requirements because of the ongoing risk of infection while incarcerated); *United States v. Perez*, 451 F. Supp. 3d 288, 293 (S.D.N.Y. 2020) (waiving the exhaustion requirement because exhaustion would be futile as defendant would not see thirty days lapse before his release date).

### B. Courts Must Find Extraordinary and Compelling Reasons Justifying Compassionate Release

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The United States Sentencing Commission further defines "extraordinary and compelling

reasons."[5] U.S.S.G. § 1B1.13, n.1; *see United States v. Kalivretenos*, No. 1:15-cr-00073, ECF No. 109, at *4 (E.D. Va. May 21, 2020). The Sentencing Commission identifies four instructive categories of extraordinary and compelling reasons that allow for a sentence to be modified: the petitioner's medical condition, age, family circumstances, and other reasons. U.S.S.G. § 1B1.13, n.1 (A)–(D).[6] However, a petitioner's rehabilitation alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t).

As a result of the coronavirus outbreak, "courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, No. 3:19-cr-112, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020) (citing *United States v. Dungee*, No. 7:15-cr-0005, 2020 WL 1666470, at *2 (W.D. Va. Apr. 4, 2020);

---

[5] The United States Court of Appeals for the Fourth Circuit recently explained in an unpublished decision that "[t]he Sentencing Commission's policy statements . . . control the disposition of [compassionate release motions], and not the BOP program statements, based on Congress' statutory directives." *United States v. Taylor*, No. 20-6575, 2020 WL 5412762, at *1 (4th Cir. Sept. 9, 2020) (citing 18 U.S.C. § 3582(c)(1)(A); 28 U.S.C. § 994(t)).

[6] The United States Sentencing Guideline § 1B1.13 provides that:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
> (1) (A) extraordinary and compelling reasons warrant the reduction; or
>     (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

*United States v. Edwards*, 6:17-cr-0003, 2020 WL 1650406, at *5 (W.D. Va. Apr. 2, 2020)). Several courts have held that "the fear of contracting a communicable disease" alone cannot be considered an "extraordinary and compelling reason" to justify a sentence modification. *Id.* (citing *United States v. Clark*, No. 17-85-SDD-RLB, 2020 WL 1557397, at *4 (M.D. La. Apr. 1, 2020) (internal quotation marks and emphasis omitted)).

### C. Courts Must Weigh the Statutory Sentencing Factors Before Granting Compassionate Release

Even after finding a sufficient "extraordinary and compelling reason" for compassionate release, the Court must then consider the § 3553(a) factors and any relevant postconviction conduct before modifying a defendant's sentence. 18 U.S.C. § 3582(c)(1)(A). The Court must weigh factors including "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The Court also must consider "the need for the sentence imposed to promote respect for the law . . . ; to afford adequate deterrence to criminal conduct; . . . [and] to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2). The statutory sentencing factors direct the Court to consider the kinds of sentences available and the sentencing range established for the offense. 18 U.S.C. § 3553(a)(4).

The Guidelines policy statement concerning compassionate release further instructs Courts to consider the 18 U.S.C. § 3142(g) factors. U.S.S.G. § 1B1.13. These include "the nature and circumstances of the offense charged . . . ; the history and characteristics of the person . . . ; [and,] the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

### III. Analysis

After due consideration, the Court will deny the Motion. The Court first determines that Hill has sufficiently exhausted his administrative remedies. (*See* Opp'n 7–8 (recognizing that Hill exhausted his administrative remedies).)

Next, the Court finds that Hill's health conditions raise serious concerns about his well-being should he contract COVID-19 while incarcerated, making him eligible for compassionate release consideration. In its Opposition, the United States practically concedes that it is "unclear whether [Hill's] health conditions, coupled with the location of his incarceration, presents an 'extraordinary and compelling reason' that could otherwise warrant compassionate release." (Opp'n 1.) Hill similarly acknowledges in his Reply that the United States does not challenge his medical conditions.[7] (Reply 1–3.) Because Hill's medical conditions make him eligible for compassionate release consideration, the Court turns to statutory sentencing factors and the Guidelines policy statement.

After considering the relevant statutory sentencing factors and the policy statement, the Court will deny the Motion. Pursuant to USSG § 1B1.13, the Court must consider whether extraordinary and compelling reasons warrant the reduction, whether the defendant is a danger to the safety of any other person or to the community as provided in § 3142(g), and whether the reduction is consistent with the policy statement. Upon review, Hill's criminal history and underlying convictions demonstrate that he presents a threat to the public due to his disregard for

---

[7] BOP medical records dated December 10, 2019 indicate that Hill's congestive heart failure has been in remission. (ECF No. 53-2 at 1.) At the same time, the records indicate that Hill has not had an echocardiogram since September 2, 2016, (*id.*), and that he continues to take aspirin and atorvastatin daily, presumably to reduce the risk of heart attack or other heart-related illnesses, (*id.* at 40.) The medical records further indicate that the BOP has afforded Hill with regular and routine care, such as teeth cleaning, a colonoscopy, and providing him with a CPAP. (*See id.* at 30, 43.)

the law and that conditions of release will not assure the safety of the community. Hill, a career offender, committed multiple felony drug offenses as an adult. Looking to the § 3142(g) factors, Hill's repeated drug offenses reflect that he presents a danger both to himself and the community. At the time Hill committed the underlying offense, he was 51 years old. Hill was found with $20,000, a gun, and 104 grams of heroin. Hill not only dealt significant quantities of heroin, he did so while possessing a firearm. The nature and circumstances of Hill's offense weigh against granting him compassionate release.

Turning to the § 3553(a) factors, Hill has served only 40% of his 188 month sentence, which may not afford adequate deterrence to his criminal conduct. Although BOP records show that Hill has committed only two disciplinary infractions during his time in federal detention, his previous criminal history indicates that the Court should consider public safety and whether his sentence promotes respect for the law.

Hill further contends that his Motion should be granted because he has engaged in post-offense rehabilitation, specifically that he completed educational classes and because he has a viable release plan.[8] (Mot. 14.) In *United States v. Martin*, 916 F.3d 389, 398 (4th Cir. 2019),

---

[8] The Court observes that Hill's BOP records state that he was placed in the Special Housing Unit (SHU) "on 1-22-2020 for a disciplinary infraction." (ECF No. 55-3 at 1.) The BOP medical records corresponding with the January 2020 timeframe speculate that Hill may have suffered injury during a fight, but that Hill denied fighting. (ECF No. 53-2 at 70.) Without more the Court cannot discern why the BOP placed Hill in the SHU.
Counsel for Hill acknowledged that he filed the Motion without the benefit of Hill's progress report. (Mot. 14.) The United States does not expound on Hill's placement in the SHU apart from recognizing that he went to the SHU and was expelled from the Residential Drug Abuse Program because of his actions. (Opp'n 15.) The United States further notes that Hill received a disciplinary infraction as recently as March 2020. (*See* Opp'n 14.) In the Reply, Counsel for Hill does not address Hill's time in the SHU and says only that "his prison record do[es] not involve violence, and he is designated to a low security facility." (*See* Reply.) Because the record is incomplete, the Court does not weigh this against Hill in deciding this Motion.

the Fourth Circuit vacated and remanded the District Court's denial of both defendants' motions to reduce sentence because the District Court failed to address any new mitigating evidence when denying the motions. 916 F.3d 397–98. The Fourth Circuit explained that if an individual is eligible for a sentence reduction, the District Court must give weight to the person's "past transgressions" as well as "the multitude of redemptive measures that [the person] has taken." *See id.* at 397.

While Hill's participation in an extensive number of educational and vocational programs are commendable, these post-rehabilitation measures do not warrant his early release in light of the seriousness of his convictions and the time remaining on his sentence. Hill displays significant progress in his rehabilitation and this Court commends him for doing so, but Congress made clear that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t).

In sum, the Court concludes that the record before it does not justify Hill's early release from federal imprisonment.

## IV. Conclusion

For the reasons explained above, the Court will deny the Motion. (ECF No. 49.)

/s/
M. Hannah Lauck
United States District Judge

Date: 10-13-20
Richmond, Virginia