IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**UNITED STATES OF AMERICA**

v.   Criminal Case No. 3:14cr114

**EARL FRANK HILL, JR.,**

**Defendant.**

### MEMORANDUM OPINION

This matter comes before the Court on Defendant Earl Frank Jr.'s Motion to Reduce Sentence Pursuant to 18 U.S.C. Section 3582(c)(1)(A)(i) (Compassionate Release) (the "Motion for Compassionate Release"). (ECF No. 64.) The United States responded in opposition to the Motion for Compassionate Release. (ECF No. 66.) Hill replied. (ECF No. 67.)

The matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons that follow, the Court will grant in part the Motion for Compassionate Release and reduce Hill's sentence from 188 months to 105 months.

### I. Background

#### A.   Hill's Underlying Offense

On August 19, 2014, Hill was charged with one count of conspiracy to distribute one hundred grams or more of heroin, in violation of Title 21, United States Code, §§ 846, 841(a)(1) and 841(b)(1)(B). (ECF No. 1.) On August 25, 2014, Hill entered into a written plea agreement with the United States in which he pled guilty to Count One, the "conspiracy to distribute, and possession with the intent to distribute, one hundred grams or more of heroin, a schedule I controlled substance." (ECF No. 13, at 1.) The Plea Agreement, (ECF No. 13), and the

accompanying Statement of Facts, (ECF No. 14), describe the conduct of Hill's underlying offense. On January 25, 2014, during a traffic stop, law enforcement officers detained Hill for possession of a firearm and recovered "104 grams of heroin, a .38 caliber Rossi revolver, and over $20,000 in U.S. currency." (ECF No. 14, at 1–2.) After being advised of his Miranda rights, Hill "admitted to dealing . . . heroin . . . for the past several months prior to his arrest [and] receiving heroin from [his] heroin source . . . totaling more than 150 grams." (ECF No. 14, at 2.) On the day of his arrest, "Hill possessed . . . 104 grams of heroin . . .with the intent to distribute it." (ECF No. 14, at 2.)

Prior to the 2014 sentencing, the probation officer prepared the Presentence Report ("PSR") for Hill, summarizing his criminal history. (ECF No. 17.) According to the law at the time, Hill's offense level of 31 and criminal history category of VI resulted in a Sentencing Guidelines range of 188– 235 months' imprisonment and at least four years of supervised release. (ECF No. 17, at 18.) Hill's prior offenses established a criminal history category of V, but Hill was classified as a career offender and therefore, his criminal history category was enhanced to VI pursuant to U.S.S.G. § 4B1.1(b). Hill's prior convictions included possession of cocaine with intent to distribute, (ECF No. 17, at 8), and possession of heroin, (ECF No. 17, at 12). *See* U.S.S.G. § 4B1.1(a)(3) ("A defendant is a career offender if . . .the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense"). On December 2, 2014, this Court sentenced Hill at the low end of the Sentencing Guidelines range and imposed a term of 188 months' imprisonment and five years of supervised release. (ECF No. 24, at 2–3.)

Hill is currently housed at FCI Allenwood Low in Allenwood, Pennsylvania. *See* Bureau of Prisons, Fed. Inmate Locator, https://www.bop.gov/inmateloc/. The Bureau of Prisons ("BOP") lists Hill's projected release date as July 14, 2027. *Id.*

### B. Hill's Motion for Compassionate Release Based on COVID-19

On April 28, 2020, "Hill submitted an administrative request for compassionate release to the Warden at Allenwood." (ECF No. 49, at 3.) On May 6, 2020, the BOP Unit Manager denied Hill's request for early release. (ECF No. 49, at 3.) On June 25, 2020, Hill filed his *pro se* Motion for Compassionate Release based on the health crisis caused by COVID-19. (ECF No. 44.) On June 25, 2020, Hill's appointed counsel filed an amended motion. (ECF No. 49.)

On October 13, 2020, the Court denied Hill's Motion for Compassionate Release after reviewing the relevant § 3553(a) sentencing factors.[1] (ECF Nos. 58, 59.) Specifically, the Court determined that Hill's criminal history and underlying convictions, as a career offender, demonstrated that he presented a danger "both to himself and the community." (ECF No. 58, at 9.) On October 28, 2020, Hill filed a *pro se* Motion for Reconsideration due to the ongoing nature of the COVID-19 pandemic. (ECF No. 60.) On June 4, 2021, the Court denied the Motion for Reconsideration after acknowledging that "Hill has serious medical concerns[,]" but that "the vaccination rates at Allenwood [indicated] that Hill face[d] reduced risks from the virus."[2] (ECF No. 62, at 6.)

---

[1] As amended by the First Step Act, 18 U.S.C. § 3582 (c)(1)(A) authorizes courts to modify terms of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582 (c)(1)(A)(i).

[2] As of January 3, 2023, 502 staff and 2514 inmates have received a COVID-19 vaccine at Allenwood FCC. *See* Bureau of Prisons, COVID-19 vaccine Implementation, https://www.bop.gov/coronavirus/index.jsp. Although vaccines continue to be an important tool in reducing the risk of serious complications from COVID-19, the changed procedural posture of

3

### C.  Hill's Instant Motion for Compassionate Release Based on *Norman*

In 2019, five years after Hill was sentenced, the United States Court of Appeals for the Fourth Circuit held that a 21 U.S.C. § 846 conspiracy conviction is not categorically a "controlled substance offense," as required to support a criminal history category enhancement under the Sentencing Guidelines. *United States v. Norman*, 935 F.3d 232, 239 (4th Cir. 2019.) On March 23, 2022, Hill sent a written request to the Warden at Allenwood "asking for compassionate release" due to the Fourth Circuit's holding in *Norman*. (ECF No. 64-2, at 1.) The next day, the Warden denied Hill's request "in accordance with Program Statement 5050.50[,]" citing "the determination of appropriateness of applying the career offender enhancement is not considered an eligible circumstance which could not have been foreseen by the Court at the time of [] sentencing." (ECF No. 64-2, at 2.)

On May 20, 2022, Hill filed the instant Motion for Compassionate Release. (ECF No. 64.) In the Motion, Hill claims that he would no longer qualify as a career offender based on the Fourth Circuit's decision in *Norman*, which would alter the Sentencing Guidelines range he would receive today. (ECF No. 64, at 2–3.) Hill argues that "[t]he disparity in [] Hill's sentence compared to what he would receive if sentenced today is" an extraordinary and compelling reason for a sentence reduction. (ECF No. 64, at 5–7.)

In addition, Hill notes he has had only two minor, non-violent, disciplinary infractions during his eight years incarcerated, with the most recent occurring over two years ago. (ECF No. 64, at 8–9; ECF No. 64-1, at 3.) Hill's first infraction occurred in 2016 when Hill was sanctioned for possessing a "hazardous tool" he claims to be a cell phone that all inmates in one

---

Hill's instant Motion for Compassionate Release shifts Hill's medical concerns to a factor weighing in favor of his release.

unit were charged with possessing. (ECF No. 64, at 9; ECF No. 64-1, at 3.) The second infraction in 2019 was for "being insolent" to a staff member after "refusing to obey an order." (ECF No. 64, at 8–9; ECF No. 64-1, at 3.)

Hill highlights that the BOP classifies Hill as low risk for recidivism and, at 59 years old, evidence suggests he is statistically less likely to recidivate than younger prisoners. (ECF No. 64, at 9; ECF No. 64-1, at 4.) In support of his rehabilitation, Hill also cites his completion of the GED program and his participation in educational and skills courses, including business plan analysis, emotional wellness, culinary arts, history, math, nutrition, and fitness classes. (ECF No. 64, at 10; ECF No. 64-1, at 6.) He points to his efforts in combating his previous addiction to heroin through completion of an "introduction to substance abuse course and a non-residential drug abuse program." (ECF No. 64, at 9; ECF No. 64-1, at 6.) Hill claims that he has successfully been drug-free for more than eight years. (ECF No. 64, at 9.) In addition, four of Hill's family members wrote letters in support of his release and reentry into society. (ECF Nos. 64-3, 67-1.)

The United States filed a Response in Opposition on June 15, 2022. (ECF No. 66.) The United States objects to Hill's requested sentence reduction and argues that defendant has not presented an extraordinary and compelling circumstance warranting compassionate release. (ECF No. 66, at 3.) The United States contends that the defendant's position "does not meet the 'exceptionally high standard of relief'" required by § 3582(c)(1)(A). (ECF No. 66, at 3.)

The United States concedes that *Norman* is the current law of the Fourth Circuit. (ECF No. 66, at 3.) It also agrees that Hill would not receive a career offender enhancement if he were sentenced today. (ECF No. 66, at 3.) However, the United States emphasizes that the Fourth Circuit has not "held Norman to apply retroactively." (ECF No. 66, at 3.) Further, the United

5

States argues that the defendant's argument is more appropriate for a motion pursuant to 28 U.S.C. § 2255, which "takes priority over the general sentence reduction provision in 18 U.S.C. § 3582(c)(1)(A)." (ECF No. 66, at 3–7.)

The United States also argues that the 18 U.S.C. § 3553(a) factors do not warrant granting defendant's motion. (ECF No. 66, at 12–14.) The United States contends that Hill has a criminal history that dates back 39 years and cites Hill's two infractions to suggest that criminal history has "continue[d] while incarcerated." (ECF No. 66, at 13.) The United States notes that Hill was expelled from a drug program "because he was placed in a Special Housing Unit for one of his violations." (ECF No. 66, at 13.) The United States concludes that "defendant poses a danger to the community." (ECF No. 66, at 14.)

On June 21, 2022, Hill replied to the government's response. (ECF No. 67.) In his reply, Hill argues that he could not have raised a *Norman* sentencing disparity through a § 2255 motion because "the Fourth Circuit has held that application of a 'career offender' designation 'does not present a claim that is cognizable on collateral review.'" (ECF No. 67, at 2 (citing *United States v. Foote*, 784 F.3d 931, 932 (4th Cir. 2015).) Hill also maintains that the sentence he is serving is "about twice as long," as the one he would receive today after *Norman*, and that this disparity is extraordinary and compelling. (ECF No. 67, at 6.) Further, he contends that the 3553(a) factors weigh in favor of his compassionate release. (ECF No. 67, at 6–8.)

### Pre- and Post-*Norman* Guideline Calculations

According to the PSR, Hill's base offense level was 24. (ECF No. 46, at 5.) After accounting for Hill's possession of a firearm, career offender status, and acceptance of responsibility, his offense level was 31. (ECF No. 46, at 5–6.) Hill's career offender status also increased his criminal history category from V to VI. (ECF No. 46, at 13.) Hill's Sentencing

Guidelines range was 188–235 months. (ECF No. 46, at 18.) After *Norman*, and without the career offender enhancement, Hill's criminal history category would be V and his offense level would be 23. The adjusted Sentencing Guidelines range for Hill would be 84–105 months.

The low-end of the original Sentencing Guidelines range, which Hill received for his current sentence, is 188 months. Without the career offender enhancement, the low end of Hill's Sentencing Guidelines range would have been 84 months. The disparity between his original *low-end* sentence (188 months) and a low-end sentence without the career offender enhancement sentence (84 months) is 104 months, or more than eight and a half years.[3] (ECF No. 64, at 7.) By comparison, the difference between Hill's original *low-end* sentence (188 months) and a *high-end* sentence without the career offender enhancement (105 months) is 88 months, or more than 7 years. Hill has served 102 months, which constitutes *more than half of his current sentence*[4] and *almost the entirety of a sentence on the high end of the Sentencing Guidelines range he would receive today*.

## II. Legal Standard: Compassionate Release Under the First Step Act of 2018

In 2018, Congress enacted the First Step Act to provide incarcerated individuals the opportunity to directly petition the courts for compassionate release under 18 U.S.C. § 3582(c)(1)(A).[5] Prior to the First Step Act in 2018, an individual could not petition the district

---

[3] The difference between Hill's original high-end sentence (235 months) and a high-end sentence without the career offender enhancement (105 months) is 130 months, or more than ten years.

[4] According to the PSR, Hill was arrested on June 23, 2014. (ECF No. 46, at 1.) The Court gave Hill credit for time served at the time of his sentencing on December 2, 2014. (ECF No. 24, at 2.) Thus, Defendant has served approximately 54% of his 188-month sentence.

[5] Section 3582(c)(1)(A) states:

The court may not modify a term of imprisonment once it has been imposed except that—(1) in any case—(A) the court, upon motion of the Director of the Bureau of

court for relief on compassionate release grounds without approval from the BOP. *See Coleman v. United States*, 465 F. Supp. 3d 543, 546 (E.D. Va. 2020). Following enactment of the First Step Act, criminal defendants may petition courts on their own initiative to modify their sentences if "extraordinary and compelling reasons warrant such a reduction." *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Before granting a reduction, courts must consider the factors set forth in 18 U.S.C. § 3553(a), *see* 18 U.S.C. § 3582(c)(1)(A), and evidence of rehabilitation and other post-conviction conduct. *See United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019) (requiring consideration of post-conviction evidence and statutory sentencing factors in the context of a sentence reduction sought pursuant to § 3582(c)(2)); *see also United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021) (extending *Martin* to motions filed pursuant to § 3582(c)(1)(B)). However, a petitioner's rehabilitation alone does not provide sufficient grounds to warrant a sentence modification. *See* 28 U.S.C. § 994(t).

A. **Exhaustion of Administrative Remedies**

Although the Court generally cannot "modify a term of imprisonment once it has been imposed," the defendant may bring a motion to modify his or her sentence "after the defendant

---

Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that—

> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020) ("Congress, aware of the BOP's history of extensive delays, also provided a '30-day lapse' alternative, under which a defendant may proceed directly to district court if his [or her] request is not acted on within that time."). "Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court." *Casey v. United States*, No. 4:18cr4, 2020 WL 2297184, at *1 (E.D. Va. May 6, 2020); *see also United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021).

In Response to Hill's first Motion for Compassionate Release regarding COVID-19, the United States conceded that Hill had exhausted his administrative remedies after receiving a denial of his "request to the warden at FMI Allenwood (Low) for compassionate release." (ECF No. 55, at 8.) Hill took the same actions to exhaust his administrative remedies regarding the instant Motion for Compassionate Release, (ECF No. 64-2, at 1–2), and the United States does not argue that Hill has not exhausted his administrative remedies, (ECF No. 66).

### B. Courts Must Find Extraordinary and Compelling Reasons Justifying Compassionate Release

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The United States Sentencing Commission further defines "extraordinary and compelling reasons." U.S.S.G. § 1B1.13, n.1; *see United States v. Kalivretenos*, No. 1:15cr00073, ECF No. 109, at *4 (E.D. Va. May 21, 2020). The Sentencing Commission identifies four instructive

categories of extraordinary and compelling reasons that allow for a sentence to be modified: the petitioner's medical condition, age, family circumstances, and other reasons. U.S.S.G. § 1B1.13, n.1 (A)–(D).[6]

The United States Court of Appeals for the Fourth Circuit has explained, however, that "[w]hen a defendant exercises his [or her] new right to move for compassionate release on his [or her] own behalf . . . § 1B1.13 does not apply, and . . . § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts." *McCoy*, 981 F.3d at 281. "As of now, there is no Sentencing Commission policy statement 'applicable' to the defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction." *Id.* at 283; *see also Kibble*, 992 F.3d 326 (concluding that § 1B1.13 does not apply to compassionate release motions that inmates (or

---

[6] The United States Sentencing Guidelines § 1B1.13 provides that:

Upon *motion of the Director of the Bureau of Prisons* under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
    (1) (A) extraordinary and compelling reasons warrant the reduction; or
    (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

    (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

    (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13 (emphasis added).

counsel acting on behalf of inmates) file directly with the district court). Furthermore, the Guidelines, while helpful, are merely advisory and do not bind the Court.

As a result of the coronavirus outbreak, "courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, No. 3:19cr112, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020) (citations omitted).

### C.  Courts Must Weigh the Statutory Sentencing Factors Before Granting Compassionate Release

Even after finding a sufficient "extraordinary and compelling reason" for compassionate release, the Court must then consider the § 3553(a) factors and any relevant post-conviction conduct before modifying a defendant's sentence. 18 U.S.C. § 3582(c)(1)(A). The Court must weigh factors including "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The Court also must consider "the need for the sentence imposed to promote respect for the law . . .; to afford adequate deterrence to criminal conduct; . . . [and] to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2). The statutory sentencing factors direct the Court to consider the kinds of sentences available and the sentencing range established for the offense. 18 U.S.C. § 3553(a)(4).

### III. Analysis

After due consideration, the Court will grant the Motion in part and reduce Hill's sentence to 105 months.[7]

---

[7] The Fourth Circuit has not addressed in published authority whether granting compassionate release offers only the opportunity to impose a sentence of time served or whether a court may grant a partial sentence reduction. Absent such authority, and considering the record

### A. Hill Properly Raised His Sentencing Disparity Through a Compassionate Release Motion

As an initial matter, Hill could not have raised his post-*Norman* sentencing disparity in a § 2255 motion.

The Fourth Circuit has held that the nullification of a "career offender designation" "does not represent a claim that is cognizable on collateral review." *Foote*, 784 F.3d at 932 (finding that "Petitioner, who was sentenced as a career offender under U.S. Sentencing Guidelines § 4B1.1, but who in fact was not a career offender in light of *Simmons v. United States*, [could not] assert a cognizable claim under 28 U.S.C. § 2255, seeking to challenge a sentence that was below the statutory maximum that would still apply").

This Court has also previously found that a defendant "cannot obtain habeas relief pursuant to § 2255, [and that] the retroactive application of *Norman* fits within the category of extraordinary and compelling circumstances that the Fourth Circuit held that § 3582 was meant to capture." *United States v. Williams*, No. 14-cr-428, 2021 WL 5827327, *6–7 (E.D. Va. Dec. 8, 2021) (citing *United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020)). Further, *Williams*

---

before it, the Court finds a reduction from 188 months' imprisonment to 105 months' imprisonment appropriate here.

Courts outside of the Fourth Circuit have recognized that partial sentence reductions may be appropriate under the First Step Act. For example, a court in the Southern District of New York recently granted a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) for a 54-year-old inmate who, along with his co-defendant, ran a cocaine and heroin racketeering enterprise and was found guilty by a jury of having participated in the torture and murder of a government confidential informant. *United States v. Rodriguez*, 492 F. Supp. 3d 306, 308 (S.D.N.Y. 2020). In *Rodriguez*, the court found that the defendant had "undertaken extraordinary efforts at rehabilitation" that "weigh[ed] strongly in favor of a sentence reduction," and reduced the defendant's sentence from life to 30 years' imprisonment. *Id.* at 314–315; 317. Although the court did not reduce the defendant's sentence to time served, it observed that the United States Court of Appeals for the Second Circuit "recognized that the [compassionate release] statute provided . . . flexibility [in sentencing] . . .thus allowing a [sentence reduction] in this case." *Id.* at 308 (citing *United States v. Brooker*, 976 F.3d 228, 237–238 (2d Cir. 2020)).

also states that "defendants who, following *Norman*, no longer qualify as 'career offenders' may suffer from the kind of sentencing disparity that the compassionate release statute was intended to capture-namely a disparity for which no other relief is available." *Id.*; *see also United States v. Spencer*, 521 F. Supp.3d 606, 610 (E.D. Va. 2021) ("Because misapplication of the career offender Guideline does not fall within the scope of § 2255 . . .or any other statute for that matter, the court concludes that the Defendant may raise his argument in a motion for compassionate release under § 3582(a)(1)(A)(i)").

Thus, Hill has properly raised the disparity in his sentence through the instant Motion for Compassionate Release.

### B.  Hill Exhausted His Administrative Remedies

Hill properly exhausted his administrative remedies before seeking relief from this Court. On March 23, 2022, Hill submitted a request to the Warden of Allenwood asking that he file a motion for compassionate release on Hill's behalf because he was "no longer a [c]areer [o]ffender." (ECF No. 64-2, at 1.) On March 24, 2022, the Warden denied Hill's request. (ECF No. 64-2, at 2.) On May 20, 2022, Hill filed the instant Motion for Compassionate Release. (ECF No. 64.) Thus, Hill properly exhausted his administrative remedies. *See* 18 U.S.C. § 3582(c)(1)(A).

### C.  The Disparity Between Hill's Current Sentence and the Sentence he Would Receive Today is an Extraordinary and Compelling Reason for Relief

Hill seeks relief based on the Fourth Circuit's ruling in *Norman* that conspiracy to possess a controlled substance with intent to distribute a controlled substance is not categorically a "controlled substance offense" as required to support an enhancement under the Sentencing Guidelines. 935 F.3d 232.

13

In the Fourth Circuit, "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)). Although the Fourth Circuit has not yet specified that a *Norman* sentencing disparity is an extraordinary and compelling reason for relief, numerous district courts within the Circuit have so held. *See, e.g., Williams*, 2021 WL 5827327, at *6–7 (finding that a difference of "more than three years longer than the high end of the guidelines" that would have applied under *Norman* warranted a reduction in defendant's sentence from 168 months to 125 months); *United States v. Elzey*, No. JKB-09-0288, 2022 WL 316717, *2–3 (D. Md. Feb. 2, 2022) ("change in career offender status, and a consequent change [that dramatically lowers] the appropriate Guidelines Sentencing range can qualify as an extraordinary and compelling reason"); *United States v. Banks*, No. 3:13cr3, 2022 WL 220638, *2–3, *6 (W.D. Va. Jan 25, 2022) (holding that an 88 month difference between the low end of Bank's career offender sentencing range and the low end of the non-career offender sentencing range is "such [a] gross disparit[y] in sentencing" that it constitutes an extraordinary and compelling circumstance); *United States v. Fennell*, 570 F. Supp. 357, 363 (W.D. Va. 2021) (finding that "the significant disparity between Fennell's current sentence and the [ten years reduced] sentence he would face today for the same offense provides an extraordinary and compelling basis for a sentence reduction under § 3582(c)(1)(A)"); *United States v. Huggins*, No. 3:11-cr-15, 2021 WL 3025459, *4 (W.D. Va. July 16, 2021) (finding a sentencing disparity of more than five years to be a "gross disparity" and an "extraordinary and compelling" reason to warrant a sentence reduction."); *but see United States v. Hinton*, No. 2:15cr80, 2022 WL 988372, *5, (E.D. Va. 2021) (holding that a three to six year sentencing disparity is "not so drastic that it constitutes an extraordinary and compelling reason for relief").

As the United States concedes, Hill would not be considered a "career offender" post-*Norman*. (ECF No. 66, at 3.) If Hill were sentenced today, without the career offender enhancement, his Sentencing Guidelines range would be 84–105 months.[8] The resulting disparity between the two sentences (188 months at the low end of the original range and 84 months at the low end of the post-*Norman* range) is 104 months, or more than eight years. This constitutes a "gross disparity" in sentences that is a sufficiently extraordinary and compelling reason to render Hill eligible for relief under § 3582. Even the disparity between Hill's original high-end Sentencing Guidelines range (105 months) and a low-end Sentencing Guidelines range without the career offender enhancement (188 months) is 84 months, which is seven years.

Hill's underlying offense is serious, dangerous, and necessarily resulted in real and meaningful harm. Hill was stopped in a car in which, as a convicted felon, he had on his person a .38 caliber revolver, 104 grams of heroin, and approximately $20,000.00 in cash. Hill's

---

[8] The table below summarizes the differences in Hill's Sentencing Guidelines ranges before and after the *Norman* decision:

|  | **PSR Computation for Conspiracy to Distribute and Possess with Intent to Distribute 100 Grams or More of Heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846** | **Post-*Norman* Computation (modifying § 846 conspiracy conviction qualification under the Guidelines)** |
|---|---|---|
| Computation | According to the PSR, Hill's base offense level was 24. (ECF No. 46, at 5.) After accounting for Hill's possession of a firearm, career offender status, and acceptance of responsibility, his offense level was 31. (ECF No. 46, at 5–6.) Hill's career offender status also increased his criminal history category from V to VI. (ECF No. 46, at 13.) Hill's Sentencing Guidelines range was 188–235 months. (ECF No. 46, at 18.) After *Norman*, and without the career offender enhancement, Hill's criminal history category would be V and his offense level would be 23. The adjusted Sentencing Guideline range for Hill would be 84–105 months. | Hill's base offense level would remain 24. A two-point enhancement is applied because Hill possessed a firearm. USSG § 2D1.1(b)(1). A three-point decrease for acceptance of responsibility is also applied. USSG § 3E1.1(b). Hill's total offense level, post-*Norman*, would be 23 and his criminal history category would be V. The resulting Sentencing Guidelines range would be 84–105 months. |
| Sentence | 188 months (low end) (ECF No. 24, at 2.) | 105 months (high end) |

15

criminal history is sustained (including multiple drug and drug distribution offenses) and resulted in a criminal history category V even without the career offender enhancement. Indeed, for that reason, the Court will not fully reduce his sentence to time served.

Nevertheless, the same serious underlying offense would subject a defendant to a Sentencing Guidelines range of 84–105 months, if sentenced today. As a result, Hill is subjected to a sentence that is eight years and six months longer than he would have received if he had been sentenced after the *Norman* decision.

Accordingly, the Court has chosen a sentence at the high end of the post-*Norman* Sentencing Guidelines range (105 months) to address both the seriousness of Hill's underlying offense and the "gross disparity" in his current sentence.

### D. The 3553(a) Factors Support a Reduction in Hill's Sentence

The Court still must consider any applicable 18 U.S.C. § 3553(a) factors even after finding that there are extraordinary and compelling grounds for a sentence modification under § 3582(c)(1)(A). As explained in Part III.C, the Court finds that the disparity of Hill's sentence for the nature and circumstances of the offense weigh in favor of granting him partial compassionate release. 18 U.S.C. § 3553(a)(1).

While Hill's "underlying offense conduct must be considered in connection with his prospects for recidivism and level of dangerousness to the public were he released[,]" the underlying offense conduct "must also be considered relative to the sentence he received and the reduced sentence he would receive." *United States v. Redd*, 444 F. Supp. 3d, 717, 727 (E.D. Va. 2020). Hill has already served more than half of his original 188-month sentence and the Court is instituting a new sentence at the high end of the post-*Norman* Sentencing Guidelines range (105 months). Hill committed a grievous offense, for which he will serve the highest

16

recommended sentence of someone who commits that offense today. Additionally, upon release, Hill will begin to serve a five-year supervised release term. While Hill's 105-month sentence adequately deters criminal conduct, the seriousness of his offenses and the need to protect the public outweigh his request for immediate release. Further, Hill's criminal history suggests that the Court should consider public safety and whether his sentence promotes respect for the law, which strongly weigh against his immediate release.

Hill's age presents a relatively low risk of recidivism, which also weighs in favor of reducing his sentence. At age 59, his recidivism risk level is statistically low, and indeed, the BOP has classified his risk of reoffending as low. (ECF No. 64, at 9; ECF No. 64-1, at 4.) *See United States v. Howard*, 773 F.3d 519, 533 (4th Cir. 2014) ("risk of recidivism in inversely related to an inmate's age") (citing Matthew R. Durose, et. al. *Recidivism of Prisoners Released in 30 States in 2005: Patterns from 2005 to 2010*, Bureau of Justice Statistics 12 (2014)). That said, Hill committed this offense when he was 52 years old, which suggests that he had not learned his lesson even in maturity.

Although Congress has made clear that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for sentence modification, 28 U.S.C. § 994(t), the Court may account for rehabilitative efforts when considering a defendant's risk of recidivism. *Id.*, at 533. Hill's record of rehabilitation indicates a reduced risk. Hill has incurred only two institutional infractions while incarcerated for more than eight years. (ECF No. 64, at 8–9; ECF No. 64-1, at 3.) His last infraction occurred in 2019. He has participated in numerous programs while in prison, many of which will likely aid his search for employment once he is released. (ECF No. 64, at 9; ECF No. 64-1.) He received his GED. (ECF No. 64-1, at 6.) It is also apparent, from the four letters received from Hill's family, that he has strong family ties and

support. (ECF Nos. 64-3, 67-1.) Ultimately, Hill's postconviction record, including his rehabilitative efforts and lack of serious disciplinary infractions, support the Court's decision to grant him a limited sentence reduction.

Therefore, the Court concludes that a reduction in Hill's sentence, from 188 months to 105 months, is warranted. All other terms and conditions of Hill's original sentence will remain the same.

## IV. Conclusion

For the reasons explained above, the Court will grant in part the Motion for Compassionate Release. (ECF No. 64.)

An appropriate Order shall issue.

Date: 1/4/2023
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge